By the Court.—Sedgwick, J.
Section 150 of art. 13 of the revised ordinances of 1859 specified the compensation to be paid to the collector and his deputies. They were to receive each as compensation for their services an equal part of 2| per cent, on all items of assessments collected by the bureau during their terms of office, and of 2 per cent, on all unpaid items of assessment returned during their term of office to the bureau of arrears for which two personal demands have been made by the collector or deputy collector on the persons required, by law to pay the same ; no moneys, however, collected on any assessment, shall be retained on account of such fees or compensation, but the amount of fees thereon shall be paid monthly on the requisition of the street commissioner, to the extent of any moneys which may have been collected and paid into the city treasury upon such assessments, &c.
The percentages involved in this action were not upon any moneys which required collection for the city, or payment to it, or indeed, which could be collected by, or paid over by the collector. These were in fact, so far as they were items of assessment, mere charges against the city, of a proportion of the sum found in the assessment proceedings necessary to be paid to persons whose property was taken, with expenses. Before the statutes that directed that the city or county should pay a proportion of this sum, say one-half, this sum was (excepting a small portion of it assessed against the city, on pieces of land it might happen to own, or for one-third of the value of buildings), charged to a variety of persons whose land was benefited by the improvement, and these charges were the items of assessments alluded to in the ordinance for *330 the collection of assessments. These items were owed by third parties, and could be collected and paid over to the city. By virtue of the statutes referred to, after their passage, one-half of the compensation to persons whose property was taken, and of the expenses, or one-half of the items referred to, were charged to the city. As to the half, in the nature of things, it could not be collected. Calling it an assessment does not change its nature. It was but a charge. It was an assessment, because the commissioners had to assess or fix the amount of the charge. On the commissioners fixing it and charging it, the collector could do nothing by virtue of his office or personally that would put the city in possession of the amount of the charge. By law and the practice of the corporation, the city would be reimbursed, for its expending the amount, by the collection of the taxes.
This assessment or charge against the city had no characteristic in common with the sums described in the ordinance, on which there was to be a percentage calculated to ascertain the amount of compensation. It could' not be collected at all, and particularly not in the sense in which items of assessment against private owners could be collected. It could not be considered as paid to the city, through the agency of the office, for at no stage. after it was imposed was its status changed, virtually or substantially, as to the proceedings for the collection of assessments. It was not a collected or paid assessment as contrasted with the unpaid assessment, on which two per cent, was to be calculated, and it never was an unpaid assessment. The compensation for collected assessments was to be calculated upon sums actually paid into the city treasury by the collector. The apparent meaning would not give a percentage on the amount of the charge to the city.
But it is argued that section 150 did not repeal an *331 ordinance of July 18,1853, which provided that the assessors shall, in every assessment list, include an amount equal to two and one half per cent, upon the total amount of such assessment, as compensation to the collector and deputy collector of assessments, and that this implied that they were to get a percentage upon the total amount. Perhaps this ordinance might give rise to a tacit understanding, that such was to be the compensation; but this tacit implication had no existence after there was an express arrangement between ■ the parties, as stated in section 150. That limited the fees, and provided that in certain contingencies the collector was not to have a percentage on the total amount of the assessment. He was not to have fees upon assessments that he did not collect, or upon such as were not twice demanded by him; and the direction to assessors became solely one to indemnify the city with certainty against fees it might have to pay ; and at that time, as comparatively inconsiderable portions of the assessments were paid by the city, the fees would in fact turn out to be, if the collector and deputies performed their duty zealously, about two and one-half per cent, upon the total amount. But it might be, if the collector was not zealous that he would collect and demand nothing from the parties, from whom the city needed the money, and would have no fees as to them. In such case, if the appellant’s position is correct, he would be entitled to a percentage upon amounts assessed to ‘the city, and as to which the collector could not benefit it.
Certainly, the city would not be justified in intentionally getting money to be paid as fees, which were not meant to be so paid it. Doing so, however, could not increase the amount of fees to be properly paid, and an intention to devote the money wholly to fees would not show that it did so in fact, in face of the ordinance that made a different provision.
*332 I do not see that the result would be affected, by deeming that the collector was not bound, in order to earn compensation, to go through the mere form of taking a check from the city authorities and returning it, or if they refused to give the check, making two demands for the money. The question would be at all stages, did he collect, in the sense of the. ordinance ? or did he make the demands meant by it ? If he could do nothing in respect of the money which would assist the city in going into beneficial possession of it, it cannot be said that it was collected by him, or that it was an unpaid assessment returned to the bureau of arrears.
It is further argued that the confirmation of the commissioner’s reports became an adjudication that commissions upon the total amount should be paid as compensation to the collector. There is ho doubt that the confirmation is a final adjudication, as to all matters then judicially determined; but 'there will be no estoppel as to what was not determined, although it may have been incidentally or collaterally presented to the court. The point of importance is that there was a judical confirmation of the report, which states among other things that the commissioners have charged as part of expenses of the improvement certain sums, being the amount of fees for the collection of said assessments. Manifestly it was intended that the city should be paid these sums, through the subsequent proceedings after the report. They were not paid as fees, for the fees were to be earned upon the collection of the assessments. The court could not have said in the proceeding that any part of them belonged to the collector, for there was no issue as to that. It only said that the sum was a proper provision for future contingencies. As to- that, there was a final adjudication. Undoubtedly the court had proven or mentioned before it some standard by which to fix the *333 amount, of the indemnity, but this standard was only a piece of evidence. It was but incidental and collateral to the adjudication, and therefore not a subject of estoppel. What this standard was is not in proof here. It is not inconsistent with the proceeding that it was contemplated only to make the city safe, beyond hazard, and that specific calculations were not relied on. Under all circumstances, it was meant that the city, alone) should have the benefit and use of the sums, and this is the full effect of the adjudication in rem.
If relied upon,' as an adjudication inter partes, the collector was not a party to it, not bound by it, and therefore, cannot take advantage of it. Whatever was the character of the proceeding, the collector could have recovered from the city the amounts due by the ordinance.
The collector, not being a party, could take advantage of the adjudication only as being in privity with the city. He was not, in fact, in privity, because the city was under no obligation to him, or he to it, to have a sum fixed, out of which to pay fees. The supposed privity could only be based upon the contract between them as contained in the ordinance, and his rights under the judgment as a privy thereto could not be enlarged beyond his rights as between himself and the party.
The distinction between Pitman v. The Mayor (3 Hun, 370) and this case, is marked. In the cited cases, the commissioners were parties to the proceeding, adversary, so far as their charges were concerned, to the city and the other parties. Their rights, in presentí, were demanded, contested or capable of being contested and passed upon in taxation and subsequent confirmation, as fully as they could be in an action. Here there was no right of the collector’s demanded.
The fact may be that the city should not have accepted so large a sum for expenses, but it was given to it for its own benefit. The legal rights of the *334 collector are not increased thereby, and morally the amount overcharged should be returned to the parties from whom it was taken (Atlantic Dock Co. v. The Mayor, &c., 53 N. Y. 64).
In my view of the case, these reports cannot be used to modify the unambiguous words of the ordinance. The intent in fact was to refer, so far as they were represented to the court, to an existing contract, which by its terms fixed the fees. It cannot be thought that the reports were meant to be a means of increasing the fees. Moreover, the defendant was not a party to the proceeding, and the contract was not changed by agreeement.
I cannot see that the tax levies (2 Laws of 1868, 2020 and 2 Laws of 1869, 2123) meant to change or to construe the ordinance. They empowered the city to receive funds to pay the assessments and amount charged to it, in certain inporovements, as set forth in the reports of the commissioners, and to pay expenses and assessments already imposed, and amounts charged to or assessed upon the city. These acts do not go farther than enabling the city to pay what it was bound to pay, but did not pass upon what its obligations were, unless (as is claimed) by its reference to the reports as confirmed. At the most, this would be an unnecessary ratification of the reports, and gave no rights beyond the legal effect of the reports, as they have been already considered here. Whatever was to be paid to the collector was by force, not of the reports, but of the ordinance.
As to the position that' the moneys paid cannot be recovered, as they were voluntarily paid upon claims against the city, competently audited by officers having authority to settle and pay, I think that the cases of Board of Supervisors v. Ellis, 59 N. Y. 620, and People v. Fields, 58 Id. 491, show that it is not well taken.
It is urged that the first cause of action is barred by *335 the statute of limitations, because, before the act of 1875 was passed, this cause of action had been barred by the statute ®f limitations then applicable to it. It is not claimed that the legislature has not power to give, by a statute, a remedy by action for a cause that has been barred once. The intent of the act of 1875, to give the people an action for moneys received before the passage of the act, is clear, and for such action, the time of limitation was given in the act. The words “after the cause of action shall accrue” referred, not to the cause of action that the city had before the act, but. to that given to the people in the act. As to past receiving of money, this cause of action accrued immediately after or upon the passage of the act, and the use of the term, “shall accrue,” was accurate as to chronology, because the words of the act must be devised and used for it before it takes effect as law.
The matters set up as a counter-claim cannot be maintained as such, because they do not charge any debt upon the plaintiff. ¡Nor can they be considered as matter of set-off, because the act of 1875 vests the money for which the defendant is responsible and the title to it in the State, and this right cannot be diminished for any purpose. The act had a policy of its own, and intended to coniine the issues to be tried in the actions to be brought under it, to the circumstances attending the alleged unlawful taking of money.
The judgment should be affirmed with costs.
Curtis, Ch. J., and Speir, J., concurred.